1                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF WEST VIRGINIA
2

3      United States of America,

4            Plaintiff,

5                  vs.                    CRIMINAL ACTION NO.

6                                         5:17-cr-20

7      Dr. Roland F. Chalifoux, Jr.

8            Defendant.

9                                 –  –  –
            Proceedings had in the hearing of the above-styled action
10     on September 7, 2018, before Honorable Frederick P. Stamp, Jr.,
       United States District Judge, at Wheeling, West Virginia.
11                                –  –  –

12          APPEARANCES:

13          On behalf of the United States of America:
            William J. Powell
14          United States Attorney
            Randolph J. Bernard
15          Assistant United States Attorney
            P.O. Box 591
16          Wheeling, WV  26003
            304.234.0100
17
            On behalf of the Defendant:
18          Elgine H. McArdle
            McArdle Law Offices
19          2139 Market Street
            Wheeling, WV  26003
20          304.232.0700

21          Ronald W. Chapman, II
            Chapman Law Group
22          1441 West Long Lake Road, Suite 310
            Troy, MI  48098
23          248.644.6326

24          The Defendant was present in person.

25          Proceedings recorded utilizing tape.
            Transcript produced by computer-aided transcription.

| | |
|---|---|
| 1 | Friday Afternoon Session, |
| 2 | September 7, 2018, 1:30 p.m. |
| 3 | - - - |
| 4 | THE COURT:  Good afternoon.  This is an evidentiary |
| 5 | hearing on two motions that have been filed.  Case is United |
| 6 | States of America versus Dr. Ronald F. Chalifoux, Jr.  It's |
| 7 | Docket Number 5:17-CR-20. |
| 8 | Government ready to proceed, Mr. Bernard? |
| 9 | MR. BERNARD:  Yes, Your Honor. |
| 10 | THE COURT:  Mr. Powell. |
| 11 | MR. POWELL:  Yes, Your Honor. |
| 12 | THE COURT:  Defendant ready to proceed? |
| 13 | MS. McARDLE:  Yes, Your Honor. |
| 14 | THE COURT:  All right.  Is there anyone that -- I |
| 15 | gave the opportunity in my order for counsel, if they wished, |
| 16 | who would not be able to attend here, to appear by telephone. |
| 17 | Do we know if anyone is appearing by telephone? |
| 18 | MR. CHAPMAN:  This is Ron Chapman on behalf of Ron |
| 19 | Chalifoux, Your Honor.  I drove down from Michigan last night |
| 20 | to be here today. |
| 21 | THE COURT:  All right.  Thank you.  Anybody from the |
| 22 | United States appearing by telephone? |
| 23 | MR. BERNARD:  No, Your Honor. |
| 24 | THE COURT:  Very well.  Thank you. |
| 25 | And I should note defendant is present in court this |

1    afternoon.

2              I'll take this any way that counsel would be

3    comfortable, and I think we can expedite the matter.  I think

4    we could probably combine the motions and just have you argue

5    them that way, but realizing that the defendant has made a

6    motion -- I want to give everybody an opportunity to proceed,

7    but I thought maybe we could just start with the motion to

8    continue and I thought maybe you could weave into your argument

9    the matters involving the motion to dismiss filed by the

10   defendant, but if you don't think that's working, you can let

11   me know.  We want to do as much as we can to get everything

12   going.

13             Is there anybody going to be testifying today?

14             MR. BERNARD:  Not necessarily anticipate that, Judge.

15   I think basically the facts as set forth in the motion to

16   continue.  I don't know that we have testimony.  And quite

17   frankly, I think the Court's ruling on the motion to continue

18   may obviate the second issue or resolve that, so I think that

19   makes sense to address the motion to continue first.

20             THE COURT:  All right.  Very well.  And I should also

21   say that my court reporter, Cindy Knecht, had an appointment

22   out of the office and could not be here in afternoon, but this

23   hearing is being recorded and it will be transcribed at your

24   request, if you need a transcript of the hearing.

25             All right.  Mr. Bernard, do you want to go ahead and

1   start.

2          MR. BERNARD:  Thank you, Your Honor.

3          As the Court noted, the United States has filed and

4   what's presently before the Court, at least a portion of this

5   hearing, is the United States' motion to continue the current

6   trial date set for next week, September 11th, 2018.  A little

7   bit of background.  Obviously, I've recently made an appearance

8   in this case and that's as a result of the current issue before

9   the Court.  And essentially what has occurred is -- a little

10  bit of background for the Court, and I kind of set forth in our

11  motion the basic facts, but Sarah Wagner, an AUSA in our

12  office, is cocounsel in the case and was preparing the matter

13  or meeting with agents approximately -- well, earlier this

14  month, at about the time these issues were raised with me, and

15  that would have been around August 9th or 10th, as they were

16  preparing for trial, the witness list, exhibits, and the

17  motions, through various discussions with the agents, questions

18  arose as to where certain matters were, documents, and they

19  couldn't be located in the Eclipse discovery system that we

20  have in the case.

21          So AUSA Wagner raised that issue with the criminal

22  chief, who then brought it to my attention, that it appears

23  that we couldn't coordinate or compare -- make a comparison

24  between the Eclipse system, in other words, the discovery that

25  was provided to the defense, and what might be in the case

1     agent's file to determine whether everything's been turned over

2     or where certain exhibits may be.  So that's when we began our

3     investigation in-house to determine what we could find out and

4     what was missing as far as documents or if we could figure out

5     what happened or how this might have happened.

6          So what I will say, by the time I contacted counsel

7     for the defendant, Elgine McArdle, we had done an

8     investigation, at least preliminary investigation, to

9     determine, yeah, in fact, there is a lapse or deficiency here,

10    for whatever reason, we're still trying to determine that, and

11    we don't know, as I stand here today, whether there are

12    documents, although I suspect there may be documents that the

13    defense does not have.  I can't really opine whether they're

14    Brady or not.  I have certain opinions, but that's not really

15    the issue.  That misses the mark with respect to today.

16         Just as you can't presume there is Brady, you can't

17    presume there isn't Brady until the United States does a review

18    of everything.  And I guess as I stand here and as I discussed

19    this matter with defense counsel, what we need to do is compare

20    what's in the case agent file with what's been turned over, to

21    even determine whether something hasn't been turned over.  I

22    know during the examination thus far it's pretty clear there's

23    a lot of documents that may be duplicates or triplicates.

24    There's the mirror image of the defendant's computer that

25    presumably the defendant has that information.  Bank records

1    the defendant either has or has control of, files that the

2    defense provided to us pursuant to subpoenas, those are all

3    things that aren't in the Eclipse system necessarily, but

4    again, if the defendant gave us records, I'm sure they have

5    those.

6              That said, as I stand here today, we have not

7    completed the review and I don't believe the United States

8    therefore can proceed ethically with a trial because until we

9    do that review, I can't confirm that any material, whether it

10   be Brady or otherwise discoverable, has been turned over.  And

11   as I said, we advised counsel -- as soon as we knew the

12   breadth, I advised counsel and we called the Court to let the

13   Court know we'd be filing a motion, but we had to wait until we

14   heard back from counsel for defendant.  Although I assumed the

15   defendant would not consent, we needed to confirm that and give

16   the Court three alternative dates.

17             So that's the status of the case.  I know the defense

18   in their motion -- it really goes to the motion to dismiss, but

19   I did want to speak to -- the one thing during the review that

20   I don't think can be said is that the lapse, for whatever

21   reason, we will continue to look into it, regardless of the

22   Court's decision today, to make sure it doesn't happen again.

23   I can't speak to why that lapse occurred, but there is no

24   indication that it was through bad faith or an attempt to hide

25   or not disclose any favorable information.  We just don't know.

1          And I would say if we're going to talk about good

2    faith or bad faith with regard to the motion to continue, the

3    fact that the United States raised it early, before trial, and

4    is presently here before, trying to address that issue and seek

5    a continuance to resolve it, I think evidences nothing but good

6    faith.

7          I know the defense has pointed to cases where

8    disclosures -- sometimes pretrial disclosures are still -- some

9    courts have found those late.  Of course, that's presumably

10   where there's <u>Brady</u> material involved.  But even looking at

11   those cases, I think they are somewhat in opposite because the

12   disclosures were made either after a jury had been seated or at

13   a point where the government should have known or knew there

14   was favorable material but did not disclose it.  That's not the

15   situation we have here.

16         What I would note is under the Speedy Trial Act,

17   3161(h)(7), I do believe that at least the Court could, at its

18   discretion, find under the factors that -- I don't believe if

19   the continuance is not granted, I don't know how this

20   proceeding could continue through a trial, because, as I said,

21   we have an ethical obligation as the government.  Yes, we put

22   ourselves in this spot.  I understand that.  But it's the

23   interests of justice that have to be weighed and whether those

24   interests in a speedy trial, the public's interest as well as

25   the defendant's, are outweighed by the interests of justice.

1          I would say this case is not -- I agree with the

2    defense.  It's not really complex.  The metric here, with

3    regard to services not rendered or upcoding, whatever you want

4    to call it, it's down to 15 claims.  I've been told when we

5    first met with Mr. Chapman and Ms. McArdle, I knew at that

6    point what some of the defense arguments were going to be.  I

7    know what the defense tactics are going to be.  So this is not

8    the United States seeking a delay to obviously prepare for

9    trial.  I think that we were in the process and I don't think

10   the case itself is necessarily complex.  However, this issue

11   and trying to resolve this issue of the obligation of what to

12   provide, what needs to be provided to the defense, is rather

13   complex, or at least unraveling it is.  And again, I understand

14   the government's to blame for that, but there's absolutely no

15   evidence of bad faith in that regard.

16         And that's essentially where we are and the genesis

17   of the motion to continue, Your Honor.

18         THE COURT:  In the memorandum the United States says

19   that the Rule 16 disclosures have been properly made.  How's

20   the government think that they've complied with Rule 16 given

21   the documents that have shown up?

22         MR. BERNARD:  I think there's no doubt about it with

23   respect to certain materials, particularly those materials that

24   would be used at trial by the United States, those materials

25   have all been disclosed, but I do believe in looking at it

1   further and in -- I think the defense does make a good point, I

2   guess with regard to tangible objects and other items,

3   obviously with respect to that, if there are documents that --

4   I don't even want to say they're material to the defense or

5   favorable to the defense, but I do believe under Rule 16 -- and

6   that's what part of the examination will be -- that may have

7   been, I think, a misstatement, that I don't think with regard

8   to those, we go deeper into that, I would say with confidence

9   that at least that aspect of Rule 16 there might be additional

10  documents that should be disclosed or might have to be

11  disclosed.

12          THE COURT:  I note that you're talking about

13  approximately 100,000 files.  And as the defendant points out

14  in his memorandum, talking files, not pages.

15          MR. BERNARD:  Right.

16          THE COURT:  Does the government have an idea of how

17  many pages we're talking about and how many separate documents,

18  and are we talking about a computer file, a digital file?

19          MR. BERNARD:  We are, Your Honor.  And that's the

20  issue.  And again, I think what we can do is what we've done as

21  it continues, the review continues, we can narrow it down to

22  certain documents that don't necessarily need to be reviewed

23  because, for example, the computer image, that's 42,000 files

24  right there.  Don't need to review that.  The defense already

25  has that.  And when I say review, the agents obviously have

1    reviewed this information as it came in.  The problem that we

2    have, it's not -- it's the -- from the government's standpoint,

3    looking at what's been disclosed versus what's in the case

4    agent file, can't necessarily marry it up, and there's a

5    disconnect from our end on that and that's why we need to --

6    before trial proceeds, need to determine what did we actually

7    turn over to the defense.  It's not clear from my review thus

8    far.

9           And I can't give you an estimation of the pages, but

10   I know in talking with the agents that an estimate as of

11   yesterday -- and I think it's a fairly strict or good

12   estimate -- is at least 60 days for the government to complete

13   that analysis and turn over what they need to turn over.

14           THE COURT:  I'm not going to hold you to a figure,

15   but if you had an idea -- if your agent had an idea of just how

16   many pages are we talking about?  I'm trying to think in terms

17   of the amount of time that would be taken for a review.

18           MR. BERNARD:  Here's the problem, Judge, when you're

19   thinking in terms of pages.  Some of that may just be claims

20   data that is not even going to be used, so it's really just

21   data as opposed to the pages.  I don't even think I could

22   quantify it into pages, Judge, especially this electronic data.

23   It comes down to how long will it take you to do a review.

24   When I ask the agent to do a review of that, of your case file,

25   and the comparison with what's either been turned over in

1   Eclipse -- I know we turned over some documents, expert reports

2   and relevant materials, turned that over in the form of a thumb

3   drive, I believe, and then we also made -- I don't know if

4   there may have been records that were turned over through

5   email, so that's where the disconnect is.  I don't know that --

6   how many documents will need to be turned over to the defense.

7   I'm sure there will be some, because the last thing we want to

8   do is get into an area where we determine what should not be

9   disclosed because it's either not <u>Brady</u> nor been -- I think

10  what we need to do is determine what hasn't been turned over,

11  because typically in these cases it's a broad and early

12  disclosure policy and the defense gets a lot, maybe a lot more

13  than they even want, and we're trying to avoid that because

14  obviously we could turn this information over in a few days,

15  but that's not going to do anybody any good.  We could turn

16  over the entire hard drive.  That's not, I think, meeting our

17  obligations.

18          THE COURT:  So assuming there are documents that are

19  not duplicates of that that has already been turned over to the

20  defendant, do you have any idea as to whether any of those

21  documents might contain materials that an expert witness might

22  have to look over, either a defense expert or a government

23  expert?  I suppose without having reviewed them --

24          MR. BERNARD:  Obviously, as I said, these claims --

25  the claims that -- the 15 that are left, those are the claims

1    that relate to travel dates or dates when the defendant was at

2    Wetzel County Hospital.   I suspect the defense -- and those

3    materials have been turned over.   Or if they are, those

4    records, I don't think, would be a great volume, but again, I

5    don't know what an expert might necessarily find relevant to

6    the review of the 15 claims we're left with.   I don't think it

7    would be a great amount, but I speak with a little bit of

8    ignorance, because I just don't know.

9          THE COURT:   One of the topics that arose in the case,

10   of course, was an attorney-client issue, and is it possible or

11   probable that those documents that are not duplicates will need

12   to be reviewed with that potential issue in mind?

13         MR. BERNARD:   I don't believe so, because I believe

14   that what we're talking about in the case file -- and I'll

15   confirm -- I don't believe that there would be.   The

16   attorney-client privilege came up because those were the Yahoo

17   records that were obtained of the defendant's emails and

18   unfortunately, as the Court previously has determined or the

19   magistrate judge did the review, there were attorney-client

20   communications there, but these records, the mirror image of

21   the computer, I don't believe that there's any attorney-client

22   privilege in those records.

23         So again, Judge, I don't believe so, but I'm sort of

24   hamstrung because I don't know.   But at this point I don't

25   anticipate that being an issue as much as getting through the

1    materials to determine what needs to be disclosed.

2              THE COURT:  But just to educate me, how does the

3    government plan to conduct a review?  Is it going to do sort of

4    the same thing that it says it did in the earlier phase, which

5    was look at a header or look at a top of a document and if they

6    thought it would be subject to an allegation of a privilege,

7    stop there?

8              MR. BERNARD:  I don't think -- really what we're

9    talking about for the most -- for, I think, a good portion of

10   the records will be -- there will be claims data and different

11   things where you don't anticipate there will be any -- just

12   trying to determine, for instance, this download, whatever it

13   might be, 1500, 2,000 files are from this health insurer

14   program.  It may not necessarily be relevant to the trial, but

15   again, if the defense doesn't have that information, we'll

16   probably turn that over just for whatever -- if they feel it's

17   relevant.  So in that instance we don't -- those are records we

18   either subpoenaed or typically it would be subpoenaed or --

19             THE COURT:  Okay.

20             MR. BERNARD:  -- that were provided by the defense.

21             For instance, there's a bunch of patient records that

22   probably aren't in our Eclipse system, but again, those are

23   records the defendant already provided to us, so it is going to

24   have to be an actual review of the probably -- start out with

25   the file header and if we can determine, okay, those are

1    records from ABC insurance company, then we know if it's not

2    clear from the header, the file name, then they'll actually

3    have to review that.

4              THE COURT:  What is the government going to do if it

5    comes upon a document and in anticipation of reviewing that

6    document and sees that it is at least a possibility that it is

7    a communication between defendant and attorney or might

8    otherwise be subject to attorney-client privilege or other type

9    of privilege?

10             MR. BERNARD:  Judge, I don't anticipate that's going

11   to happen, but if that happens I think at that point we have to

12   pull the plug and at least with the review segregate that

13   potentially then with a taint team and review.  I don't

14   think -- the records, as I understand them -- and one way we'll

15   be able to determine that is the agents go through and they do

16   look at the file names.  If they're not emails, for instance,

17   or records obtained from the defense, which, again, I don't

18   think there's any indication that that's what we're talking

19   about, but if there is a record that appears to be privileged,

20   then I think we're not going to have a choice.  That might slow

21   down the process.

22             THE COURT:  And you may have touched on this in your

23   first remarks, but just how and when did the United States

24   obtain these 100,000 files?

25             MR. BERNARD:  Well, during the search, the mirror

1    image of the computer, 42,000 files were obtained.  I can't

2    remember exactly -- the agent could specify, but I think these

3    are records, these 100,000 files, this is the case agent's

4    file.  This was cumulative over the course of the

5    investigation.  So it's not like it just happened yesterday.

6    This has been a cumulative assembly of records by the case

7    agent.

8            The problem is the records that were disclosed during

9    the -- in the Eclipse system during discovery phase don't

10   evidence some things that are in the case agent's file, so I

11   can't say that it was any one given point.  It was cumulative

12   over the course of the investigation.  And the investigation

13   obviously continued even after the indictment, so it's been

14   ongoing.

15           THE COURT:  All right.  Thank you, Mr. Bernard.

16           MR. BERNARD:  You're welcome.

17           THE COURT:  Mr. Chapman, you want to take over.

18           MR. CHAPMAN:  Your Honor, what we have here is, on

19   the surface, a very simple analysis under 18 U.S.C. 3161.  Just

20   make sure I'm getting picked up on the mic here.

21           And our position under the statute is very clear and

22   it does not permit an adjournment for this purpose.  And while

23   I didn't outline it in our papers, when we look at Section C,

24   it contains very specific language that would prevent the

25   government from seeking an adjournment or seeking excludable

1    delay under the Speedy Trial Act for exactly just this purpose.

2             Section C says, no continuance under subparagraph

3    A -- the paragraph the government cites in seeking a

4    continuance and exclusion of the time -- no continuance under

5    subparagraph A shall be granted because of general congestion

6    of the court's calendar or the lack of diligent preparation or

7    failure to obtain an available witness on the part of the

8    attorney for the government.  No continuance shall be granted

9    for lack of diligent preparation on behalf of the government.

10            Now, with all due respect to the government -- and we

11   appreciate their candor in outlining this issue to us.  We

12   appreciate that they brought it to the attention of the Court

13   and to us.  But we believe that this adjournment is being

14   sought specifically because of lack of diligent preparation.

15   It is not a difficult task, in fact, it is one of the first

16   tasks the government must undertake when analyzing discovery,

17   is to ensure that the defense has what the government has that

18   should be disclosed under Rule 16 or Brady, and in that case

19   over a year has gone by and that was not done.

20            And I think it's helpful for the Court to understand

21   the extent to which that has not been done.  While I don't have

22   the specific numbers here, I'll just summarize what we believe

23   we have received in discovery.  I believe the Eclipse program

24   contains something like 6,000 pages' worth of information.  We

25   believe that the emails that were produced late, in violation

1    of the Court's initial disclosure deadline, contained 12,000

2    pages.  The mirror image of the computer, I'll accept the

3    government's representation, contained 42,000.  That number --

4    and I'm an attorney because I'm not very good at math, Your

5    Honor, but that number is a lot less than 100,000, which means

6    the government is about to disclose to us potentially thousands

7    of pages of information that, by their own representation, we

8    believe they're intending to use at trial against

9    Dr. Chalifoux.

10            If you recall from the government's recitation of the

11   facts, this issue was discovered when Ms. Wagner was preparing

12   to prosecute this case and go to trial and realized that some

13   of her evidence had not been disclosed to the defense.  So the

14   purpose of this adjournment may be to review files, but the

15   real purpose is for the government to bring in additional

16   evidence that has not been disclosed to the defense.

17            That's evident in the fact that in filing its motion

18   to continue this case, the government declined to follow your

19   order and file an exhibit list or a witness list.  I think that

20   the government should be asked why they failed to do so.  Our

21   belief is that they don't want to be held to certain exhibits

22   and certain witnesses because they know that if they later file

23   another exhibit or witness list that has different exhibits and

24   witnesses, we would argue that the continuance here is being

25   sought simply for the purpose of improving its case.

1          We also know that the trial team in this case has

2     drastically changed.  The attorney who represented the

3     government at every single hearing is not here in court today,

4     and we have a completely new trial team that has filed

5     appearances in this case.  It's apparent to us that they've

6     reviewed their case, they've realized that there are shortfalls

7     in the case, and are now seeking additional time to improve

8     their chances of obtaining a conviction against Dr. Chalifoux,

9     and that is something that excludable delay cannot be granted

10    for, Your Honor.  The Speedy Trial Act would be gutted if there

11    was a decision that failure to diligently prepare a case for

12    trial over the course of a year is a reason to find excludable

13    delay in a matter such as this.

14          Your Honor, this also is not the first time, as I

15    mentioned earlier, that this has happened to us.  Shortly

16    before we were scheduled for trial last April, April 3rd, on

17    the 28th, February 28th, the government provided to us

18    thousands of emails that were obtained from government agents

19    in a subpoena of his Yahoo -- of the defendant's Yahoo account.

20    Through that we learned that the government had obtained and

21    had access to confidential attorney-client privileged

22    information, not just including emails with counsel, but also

23    including sensitive attachments of time lines, of materials

24    that were prepared by Dr. Chalifoux for his counsel and by

25    Dr. Chalifoux's counsel for Dr. Chalifoux's benefit.

1          The government was asked by the Court earlier if any

2     of the information contained in the 42,000 images -- or

3     document files from the image of the hard drive contained

4     attorney-client information.  I understand that the government

5     does not know that to be the case right now and can't

6     specifically exclude that from being the case.  I will

7     represent to the Court that we believe that it is the case that

8     the images of that computer do contain sensitive

9     attorney-client information.

10         If you recall, during the evidentiary hearing on the

11    taint team issue or the privilege issue, Agent Noullet, who's

12    here in court today, testified that he sent the email -- Yahoo

13    email subpoena response to six different agencies.  We believe

14    that the file that's being compared in this case is from one of

15    those agencies, and we believe that the images of that computer

16    do contain emails that Dr. Chalifoux traded with counsel.

17    Therefore, it's very possible that the 60 days the government's

18    asking for may not be sufficient, if the taint team has to be

19    involved in this case in order to review information, further

20    expanding the delay of Dr. Chalifoux taking this issue to

21    trial.

22         I heard the government talk a bit about bad faith,

23    and I just want to provide to the Court, bad faith is not at

24    issue here.  There's no statute that we're citing that requires

25    bad faith.  In fact, there's a significant amount of case law

1    that says Brady is violated irrespective of bad faith of the

2    government.  Whether or not we're alleging bad faith is

3    irrelevant.  Our problem here is that Dr. Chalifoux has been

4    waiting really since 2012, but since 2015 when the

5    investigation started in this case, to have his day in court.

6    We thought that day was going to happen on September 11th,

7    2018, but it's not.

8            Regardless of bad faith, if the Speedy Trial Act is

9    violated, the statute says this case shall be dismissed.

10   Regardless of bad faith, if Brady is violated, this case --

11   well, there ultimately would be an overturnings of any jury's

12   decision in this matter.  And what we believe, as we indicated

13   in our papers, this puts the defendant in a very difficult

14   position.  He's put in a position where he either has to waive

15   his speedy trial rights or he has to waive the ability for his

16   defense team to diligently prepare, and the conundrum that the

17   government has put us in is solely due to whether or not they

18   had bad faith, the delay, the delay to carry out their ethical

19   duty to compare the information provided to the defendant and

20   the defense with the information they have in their file.

21           As a result, I believe dismissal is the only proper

22   remedy for this Court to make today.  This case cannot be

23   adjourned, because adjournment would surely violate the Speedy

24   Trial Act.  It would violate 3161 and it would specifically be

25   for the purposes outlined as I quoted in Section C, which would

1    be improper.  And a continuance violating the Speedy Trial Act

2    would certainly result in dismissal of this case.

3              THE COURT:  Where does this place the defendant if I

4    deny the motion to continue and we go to trial next Tuesday,

5    September the 11th?

6              MR. CHAPMAN:  Thank you for asking that question,

7    Your Honor.  We believe that the government has to bear the

8    burden of what they've done.  If there is Brady information

9    contained in those files, then they've committed a Brady

10   violation, and it was committed as of the time that they failed

11   to disclose the information.

12             THE COURT:  I mean, you're candid throughout the

13   brief and you're candid in your presentation by preceding

14   everything you say about the word Brady with the word "if."  We

15   don't know if there's a Brady violation at this point.

16             MR. CHAPMAN:  I understand.

17             THE COURT:  And you can't raise the Brady violation

18   until one is apparent, to counsel, and then later to Court, and

19   the Court has an opportunity to decide whether or not there's

20   been a Brady violation, and if there has been a Brady

21   violation, whether or not it rises to the heights of justifying

22   a dismissal of the indictment.  That's the -- that's my puzzle.

23             MR. CHAPMAN:  No.  I understand the conundrum, Your

24   Honor.  First, let me back up.  Because we believe there cannot

25   be a continuance, this case should proceed to trial.  It should

1    proceed to trial without the government having the ability to

2    call witnesses or present exhibits, because they failed to

3    follow your very specific order that required us to file

4    exhibits, exhibit lists, and witness lists, and present the

5    exhibits to the Court.  As a result of the government's failure

6    to follow that order, we have been prevented from filing any

7    motions in limine to exclude evidence.  At this point, Your

8    Honor, I make an oral motion in limine to exclude all

9    government exhibits, because they failed to follow that order.

10   So there must be a trial, but that trial, because of the

11   government's failure, can't have any exhibits or witnesses on

12   behalf of the government.

13           The second issue is how do we deal with this

14   undisclosed information.  The violation has already happened.

15   Under Kyles v. Whitley, the government had a duty to seek out

16   discoverable information.  We can't delay this case because of

17   a potential Brady violation.  Therefore, there must be a trial.

18   We must have the opportunity -- and this was the solution we

19   fashioned in our papers -- we must have the opportunity to

20   simultaneously review that information, and if there was

21   information that the government suppressed by failing to

22   disclose it that would have been favorable to the accused, we

23   should be able to, at some point after trial, raise the Brady

24   issue for the Court's consideration of whether or not that rose

25   to the level to negate any conviction of Dr. Chalifoux.

1          THE COURT:  Would you agree that Brady does not come

2   into fruition until there is some trial or some hearing based

3   on materials that would lead the Court to deem them to be

4   exculpatory or Brady material?

5          MR. CHAPMAN:  That is a very difficult question to

6   answer, because I think there's much disagreement amongst the

7   case law regarding that.  I believe Brady stands for the

8   proposition that the government has a duty to seek out and

9   produce in a timely fashion information favorable to the

10  accused that may be exculpatory.  There is a violation because

11  that duty has not been followed.  The government cannot say

12  this is not a Brady violation because we never sought out the

13  information and we never disclosed it.  If a violation has been

14  committed, it has already been committed, because it was not

15  produced to the defense in time to be used at trial.

16         The next question is whether or not a case may be

17  dismissed as a result of a Brady violation, and for that I

18  agree with you, Your Honor.  That must happen if the government

19  failed to provide information and that failure led to the

20  conviction of the defendant.

21         THE COURT:  Did you raise in your response to the

22  motion to continue or your motion to dismiss the issue of the

23  government having not filed an exhibit list or a witness list?

24         MR. CHAPMAN:  Your Honor, at the time that we drafted

25  that, I believe that we were still waiting to see if the

 1    government would file a witness or exhibit list.  So that was

 2    not raised in our brief.

 3              THE COURT:  I don't have it in front of me.  Was it

 4    due -- was it past due or was it still --

 5              MR. CHAPMAN:  I think it was due the day that I

 6    drafted and filed our response and our motion to dismiss in

 7    this case.

 8              THE COURT:  I'm sorry.  I didn't hear.

 9              MR. CHAPMAN:  I think it was due the day that I

10    drafted the motion to dismiss in this case.  I think that one

11    of the first clauses in my motion and in my response was

12    that -- may I have one second, Your Honor?

13              THE COURT:  Sure.

14              MR. CHAPMAN:  I don't believe they were due the day

15    we filed our response, Your Honor.

16              THE COURT:  They were not due?

17              MR. CHAPMAN:  No, I don't believe so, but they've

18    since been due and the order of this Court's been violated.

19              And that's all I have, Your Honor, but can I confer

20    with Ms. McArdle briefly to ensure that there isn't anything

21    that I missed?

22              THE COURT:  Sure.

23              MR. CHAPMAN:  Thank you.

24              Your Honor, there's two other issues that I'd like to

25    raise.  The first is that we haven't received any disclosures

1    of Jencks information.  I believe the government mentioned in

2    their response that they provided grand jury transcripts to the

3    defense.  I don't recall seeing any grand jury transcripts.

4    That further prejudices our ability to move forward to trial in

5    this matter.

6          And then in addition, as I discussed before, Special

7    Agent Noullet indicated he gave the emails that he received,

8    the 12,000 emails, to six other agencies.  Our concern remains

9    that that information is in the hands of six other agencies and

10   may or may not be reviewed by people who potentially could

11   testify in this case, furthering the taint of the

12   attorney-client email issue.

13         THE COURT:  Are you asking to limit the government in

14   its review to certain individuals and not to anybody else?  I

15   want to make sure I understand your argument.

16         MR. CHAPMAN:  May I have one moment, Your Honor.

17         In fact, Your Honor, maybe it would be easier.

18   Ms. McArdle has a specific point.  May she be heard briefly on

19   that issue?

20         THE COURT:  Of course.

21         MR. CHAPMAN:  Okay.  Thank you.

22         MS. McARDLE:  Your Honor, with regard to the emails,

23   Special Agent Noullet testified that 12,000 emails were given

24   to six different agencies.  I believe they were the FBI, the

25   DEA, the postal service.  Donna Garrison was one of them.  I

1    don't know which file it is that the government indicates that

2    they want to see and compare whether it's a mirror image and

3    that file, that particular agent, has 100,000 files in it.  I

4    would like to -- it's crossed my mind what other agencies --

5    has the FBI file been reviewed by the government.  Has the DEA

6    file been reviewed by the government.  Has the entire postal

7    file been reviewed by the government.  There are six different

8    agencies to which these emails were sent.  And to the extent --

9    I believe Special Agent Noullet's answer is, do you know if

10   these agencies actually reviewed those emails, and the answer

11   was, I don't know.

12           So to the extent that the government has come forward

13   with a motion to continue based upon a failure to compare one

14   particular agent's file that contains 100,000 files, I have to

15   inquire whether or not the five other agencies that have a copy

16   of these emails likewise have files that are 100,000 files or

17   40,000 files or 60,000 files.  To the extent that the

18   government has not made an indication that all of the files

19   that were in their possession have been compared to one another

20   and disclosed, that would be the first issue, because if we

21   come back and 100,000 files have been reviewed but then we come

22   back for another trial and say the DEA's wasn't reviewed and we

23   have that, or the FBI's hasn't been reviewed and we have that,

24   the concern that overlies that entire analysis is the extent to

25   which these 12,000 emails have been reviewed by other agents

1    and then to what extent can these agents who may be testifying

2    compartmentalize what they learned when they read a header or

3    did they read a header.  We simply don't know.

4            The emails -- the hearing that we had on the emails

5    solely related to Special Agent Noullet's review.  And he

6    indicated that he gave those emails to six different agencies.

7    That's where the inquiry stops.  That's where the evidence

8    stops.  We don't know what happened to those emails, what

9    extent they reviewed.  And to that extent, that taints the

10   entire case, in my opinion, if, in fact, those other agents

11   have reviewed them or have files that haven't been reviewed by

12   the government, which then puts another conundrum into the

13   case.

14           THE COURT:  Well, one answer to the question is if

15   there are other documents out there and I do grant a motion to

16   continue and I do deny the motion to dismiss at this time, if

17   those documents are out there, then an answer to that is they

18   don't get used in the trial.  But what does that do to a

19   potential Brady argument?

20           MS. McARDLE:  That's what we don't know.  And

21   unfortunately what we cannot --

22           THE COURT:  Do you have an idea of what the Court

23   might do to alleviate that potential problem?

24           MS. McARDLE:  I think the only thing that the Court

25   can do is to give the defense a simultaneous review of all the

1    files that the government has in its possession.  But again, I

2    can represent to you that I had an intern looking at those

3    12,000 emails and it took him every day, eight hours a day, for

4    three weeks, to look at 12,000 emails.  So again, we have -- we

5    certainly have trial schedules as well, other clients as well,

6    and we do not have the resources of the government to do it

7    simultaneously.  That's the only way that I could potentially

8    see the Court alleviating it, but that doesn't -- I still don't

9    think that meets the trial date of Monday or Tuesday.

10            THE COURT:  No.  I'm not stating the question very

11   well, I'm sure.  I'm talking not about the emails that you

12   already have in your possession.  I'm talking about -- and

13   we're not even talking about the emails that have just surfaced

14   in August.  We're talking about the possibility, potential,

15   that there are other emails that have gone to agents, other

16   agencies, that will need to be -- if they turn up and are

17   disclosed, I'm sure they would be, need to be reviewed.  Then

18   what is the -- what's the potential solution for the Court?

19            MS. McARDLE:  Well, I think the solution would be to

20   prevent those -- that information -- I think the solution is to

21   preclude all that evidence from coming in, but that brings us

22   back to then let's proceed to trial on Tuesday, if they can't

23   use any of the evidence, but I don't think that absolves the

24   issue or the diligence or the duty to look through the files

25   and discovery --

1           THE COURT:  Seems to me the same issue exists.

2           MS. McARDLE:  Correct.

3           THE COURT:  The issue of not using the files and

4    potential Brady issue -- the Brady issue, it seems to me,

5    could -- I'm not saying it will -- loom large in the future.

6    And I was asking questions and maybe they're just questions of

7    potential effects of what happens if there are other documents

8    to other agents that become apparent.

9           MS. McARDLE:  I think if there are other documents

10   that -- to our agents that become apparent that are Brady, then

11   I think the only remedy is a dismissal or a reversal of the

12   conviction.  If there is --

13          THE COURT:  We haven't had a trial yet.

14          MS. McARDLE:  Or a new trial.

15          THE COURT:  Well, okay.  Anything else?

16          MS. McARDLE:  No.

17          THE COURT:  Thank you.

18          Mr. Chapman, you want to close your argument.

19          MR. CHAPMAN:  Yes, Your Honor.  Thank you.

20          By way of remedy, Your Honor, I want to be clear.

21   We're requesting that this case proceed to trial as scheduled.

22   If the Court declines to do that and intends to grant the

23   motion to continue, there should be a specific order that the

24   government cannot benefit from this continuance.  This review

25   should only be for the purposes of determining whether there

 1    was information to be disclosed by the defense, to the defense.

 2    And therefore, the government should not use this additional

 3    delay to create any additional evidence, to bring additional

 4    evidence before the Court, or to raise any additional evidence

 5    at trial.  Dr. Chalifoux has been waiting for a year for his

 6    day in court.  We will have lost the benefit of the year if a

 7    new trial team completely reconstructs this case and attempts

 8    to offer new evidence and exhibits.

 9            But to be clear, our position is that this case must

10    either be dismissed with or without prejudice, Your Honor, and

11    the government can take their time to reinvestigate their case

12    and refile, if they choose -- that's certainly a remedy

13    available for the Court -- should be dismissed, or the

14    government should not get the benefit of delay in this case.

15            Thank you, Your Honor.

16            THE COURT:  Did you suggest dismissal without

17    prejudice in your motion to dismiss?

18            MR. CHAPMAN:  We did not, Your Honor.

19            THE COURT:  Okay.

20            Mr. Bernard, do you want to speak to the issue that

21    was raised by Mr. Chapman, which is that there hasn't been --

22    which they believe now justifies further relief, there have

23    been, to date, no witness list submitted and no exhibit list,

24    and they say no grand jury transcripts have been delivered.

25    And is that so?  And if so, why hasn't that been done?

```
1              MR. BERNARD:  With respect to the exhibit and witness
2    lists, I can speak to that.  Obviously, when I became involved
3    with this issue in this case, a matter of now it's been about
4    two weeks, it was apparent to me, as well as everybody from the
5    United States, that in order to do what we've got to do, our
6    ethical obligation, there's the trial of September 11th, we
7    couldn't meet that obligation and try this case without
8    undermining or potentially undermining our ethical obligation,
9    so the focus, pure focus, has been to determine the breadth of
10   this problem and how it can be addressed.
11              So the -- I guess the short answer is if a
12   continuance is not granted and the Court decides that for
13   whatever reason under the Speedy Trial Act or what other
14   reasons the trial must proceed next week, I think the United
15   States is left with one choice, and that's to seek a dismissal,
16   because we can't proceed with trial, not knowing -- or at least
17   not without doing the review and analysis that needs to be done
18   ethically.  So I think that would be my answer.
19              The truth is the witness and exhibit list, I guess
20   for lack of a better term, thought it would be academic at that
21   point, because it's pretty clear that without doing the review
22   that needs to be done, and that will definitely exceed
23   September 11th, a September 11th trial date, what I will say is
24   the United States doesn't seek that and additional charges or
25   evidence.  The evidence we have is the evidence we have.  And
```

 1   that -- this is not about preparation -- I think that's

 2   somewhat of a red herring to say you didn't file a witness and

 3   exhibit list; therefore, you're not ready for trial.  No.  The

 4   reason the trial, in the United States' opinion, cannot occur

 5   regardless of the Court's decision is we've got an ethical

 6   obligation to meet before we try a case, and that hasn't been

 7   met.

 8              THE COURT:  If the motion to continue were denied and

 9   the parties go to trial on September 11th, you say you'd seek a

10   dismissal.  Would that be a dismissal without prejudice?

11              MR. BERNARD:  I think the United States would -- I

12   think what we do is file that motion to dismiss, Your Honor,

13   because I don't think -- we're left with no other choice in

14   that instance, because proceeding to trial -- could we proceed

15   to trial and as the defense said, there hasn't been an exhibit

16   or witness list filed, I guess arguably you could proceed to

17   trial, but it would be a fool's errand, I think, to do so

18   without meeting our ethical obligations.

19              THE COURT:  Here again, this must be my day to ask

20   incomplete questions, but my question was would you be seeking

21   dismissal with prejudice or without prejudice?

22              MR. BERNARD:  This time probably without prejudice,

23   Your Honor.

24              THE COURT:  Yeah.  All right.  Thank you very much.

25              MR. BERNARD:  Thank you, Your Honor.

1          THE COURT:  There have been a couple of issues that

2    have arisen during the hearing and I will try to touch on them,

3    hopefully.  And I want to give you a ruling this afternoon,

4    obviously, because of the imminency pending trial, and also to

5    give the parties an opportunity to have the feelings of the

6    Court one way or the other.

7          First of all, I am going to apply the exclusion under

8    18, United States Code, Section 3161(h)(7)(A), and that is the

9    exclusion under the Speedy Trial Act.  I believe that the ends

10   of justice are served by allowing for a continuance and that

11   those ends of justice outweigh the best interest of the public

12   and the defendant in a speedy trial.

13         While it's possible that this particular case doesn't

14   fit within a specific language of the Speedy Trial Act

15   exclusions, this one or others, I think that a fair reading of

16   the exclusions to the Speedy Trial Act mean that in a case with

17   a particular factual situation such as we all face ourselves

18   with this afternoon, would justify applying the exclusion.

19         The last issue that was raised in oral argument seems

20   to me to argue in favor of applying the exclusion rather than

21   denying it.  If the government has the opportunity to dismiss a

22   case without prejudice and then, of course, the issue would

23   arise whether or not that dismissal should have been with

24   prejudice, that's another issue.  If they can dismiss the case

25   without prejudice and then bring the case all over again, then

1    what good have we all done in a trial like this or how has the

2    Court been at all helpful in advancing the rule of law or the

3    particular rules of law that are involved in this case.

4         If this Court were to deny the motion for the

5    continuance, and I am denying the -- I'm granting the motion

6    for a continuance, but if I were to deny the motion to continue

7    and the trial proceeded, with the recently filed materials

8    couldn't be reviewed, then the recently filed materials

9    couldn't be reviewed in time to see, for example, as to whether

10   or not there had been Brady exculpatory material that might

11   benefit the defendant or even warrant a dismissal under a

12   certain particular situation which may or may not exist

13   because, as I said, I think defendant's counsel have been

14   candid in stating all of its Brady arguments, at least as I

15   view them, as being in terms of if these things occur.

16        So I am going to grant the dismissal [sic].   I think

17   that a continuance is necessary to determine the nature and

18   extent of the new materials and to see whether or not, as was

19   noted in the briefing, there is anything that even resembles

20   potential Brady exculpatory materials or other materials that

21   might be a cause for an exclusion.

22        I will deny the motion to dismiss as it was filed by

23   the defendant.   I don't think there's sufficient evidence to

24   justify a dismissal at this stage.   Obviously, the intent to

25   have it dismissed with prejudice.   And that motion is -- as I

1    read it, is based on the condition that any of the 100,000

2    files contained exculpatory Brady material and that that

3    exists, and that those violations have already occurred.

4            So I think to state the obvious, the Court can't even

5    determine at this point whether or not the existence of the

6    files or any one of them is conduct that is so, quote,

7    outrageous as to shock the conscience of the Court.  And I

8    think at this stage we cannot tell whether or not there has

9    been sufficient prejudice to the defendant justifying a

10   dismissal.

11           The defendant seems to concede that a thorough review

12   of the materials is necessary to see if it contains Brady

13   information, and if so, whether or not dismissal is

14   appropriate.  I would also, in connection with the motion --

15   denying the motion to dismiss, decline to quash the indictment,

16   as requested.

17           So I am granting the continuance to permit the review

18   of 100,000 files.  At least that's the number reported by the

19   government.  It does not mean that I am ruling that any of

20   these files are admissible for use by the government, and I'll

21   defer that ruling to a later date.

22           I do believe that the alternative approach proposed

23   by the defendant at page 12 of its response in ECF 72 makes

24   some sense to me, and I think that's a valid approach.  So I

25   will permit the defendant to review all of the 100,000 files of

1    discovery and if exculpatory material is located, obviously

2    permit defendant to raise the appropriate Brady issue by

3    motion.

4            As the government has certainly candidly noted, it

5    has acknowledged its responsibility by its counsel and

6    indicates that that apparently does not fall at the feet of the

7    agent.  I will say that maybe I'm the only one in the room that

8    thinks that this case is complex.  I think it is complex in

9    this sense:  I think particularly any case of this nature is

10   going to involve some complex issue, but we have competent

11   counsel that can try the case.  There's no question about that.

12   What I do think is that it's complex in the sense that there

13   are now documents that really haven't even been reviewed to

14   decide whether or not they are admissible, decide whether or

15   not they raise Brady or other issues that ought to be raised,

16   and it certainly is an issue, as I understand it, eleven

17   charges of health care fraud, charges of mail fraud, charges of

18   wire fraud, and then later charges of health care fraud, 23

19   through 26.

20           We need to find out, as the government notes, whether

21   or not any of these documents are duplicates, any of these

22   documents are not favorable to the defendant and might not be

23   sought to be used by the defendant once they see them.

24           I will say that it seems to me that this situation is

25   somewhere between being outrageous conduct that should shock

1  the conscience of the court, conscience of the court, as

2  characterized by the defendant, or an unfortunate discovery

3  mistake, as it is characterized by the government.  It is

4  somewhere in between, and I do not propose to define exactly

5  where it falls in between.  It certainly reflects negligence on

6  the part of the government through its counsel and through a

7  lack of due diligence and short of warranting dismissal, but

8  clearly warranting the necessity to move the trial date from

9  September 11th to a later date.

10       The government suggests in its papers that it will

11  need 60 days to review these 100,000 files.  That offers the

12  defendants 30 days to review, and consequently the total of 90

13  days is being sought.

14       I'm prepared to give you a trial date at or around

15  that 90-day period.  However, I don't think it helps anybody

16  for us to have to come back again to try to reschedule this

17  case.  I think we ought to look at -- try to look at this case

18  realistically and, without taking too much more time, decide

19  whether or not the review can be made in this time.  I can give

20  you a trial date within the time period that was suggested by

21  the government.  I can give you that around December 18th.  I

22  can give you that date around December -- around January 2nd.

23  That is a civil week, but it would be open for insertion of a

24  criminal case such as this.  Or January the 8th, which would be

25  one of my criminal weeks.

1                So counsel want to meet and confer and talk to me

2       about the trial date that is realistic.  I think the dates that

3       have been suggested are realistic, but I'm not the one doing

4       the review of the documents, because we don't even know what

5       these documents say or consist of.

6                MR. CHAPMAN:  That's exactly my position, Your Honor.

7       We don't know what's going to be in these 100,000.  My proposal

8       would be that the parties meet and confer about a trial date

9       and then seek dates from the Court and then file something with

10      an agreed-upon trial date after we have an idea -- after

11      disclosure of this information, what's contained within this

12      information.

13               THE COURT:  Mr. Bernard.

14               MR. BERNARD:  Your Honor, I know we had been provided

15      the -- through discussions with counsel, the three alternative

16      dates.  I have no objection conferring with the defense.  Under

17      the Court's order I think what we can do is provide the

18      information, 100,000 files that we have on a hard drive.  That

19      can be done relatively quickly.  I don't know if that helps

20      counsel determine at that point what a reasonable trial date,

21      but it seems to me that I know cocounsel for the defense, we

22      talked and I believe there's a trial January 8th that she has,

23      another health care fraud case, so the alternative dates in

24      March may end up being the more reasonable approach, but we'll

25      discuss with counsel.

1        THE COURT:  Would your decision be totally based upon

2   having an opportunity to review 100,000 files or -- and do you

3   want me to set a trial date in December or January with the

4   idea that we're going to consider -- we're going to have to

5   perhaps consider moving it, or do you want me -- if you can do

6   it by -- I know defendant doesn't like my ruling.  That's all

7   right.  Can we do it -- could you agree that it may be, under

8   the circumstances, necessary to agree to a further continuance

9   beyond 90 days.  I think defendant is saying that 90 days won't

10  do it.  At least that's the way I read it.

11       MS. McARDLE:  I think, Your Honor, the first --

12  Mr. Chapman and I are involved in another health care fraud

13  case with the government in Clarksburg that's scheduled on

14  January 8th.  So that date is definitely not available.  As far

15  as the rest of the -- it would seem to me that there is going

16  to be -- after review of 100,000 files, there's going to be

17  motions.  I can't imagine there not being motions that would

18  further exclude the speedy trial, obviously.

19       I think setting a date in December is optimistic.

20  January is obviously not available.  And so if we're going to

21  set a date, I would -- I think we should, per the Court's local

22  rules, confer and get three dates that are also under the

23  complex trial rules, confer and get dates based upon what we

24  have before us and then submit those three dates to the Court.

25       I think that December and January is optimistic in

1   light of the Court's ruling.  Obviously, we are stuck with that

2   ruling and we can't -- that part of the conundrum for our

3   client is erased because he does not have to make a choice

4   between waiving a speedy trial.  We advocated that.  We

5   preserved the record.  So going forward, I think we need to be

6   diligent in the review of these records, and I think that

7   January is extremely optimistic.

8          THE COURT:  Mr. Bernard.

9          MR. BERNARD:  Your Honor, one thing I wanted to

10  clarify, in the Court's ruling I believe the Court indicated

11  that the defense should be given the opportunity to review the

12  100,000 files.  Is that -- I just want to be clear.  We can

13  certainly -- we will continue to do a review on our own, but we

14  can certainly provide right now, or I should say in a matter of

15  a week, the 100,000 files, the case agent's file?  Is that what

16  the Court was ordering us to do?

17         THE COURT:  Yes.  That includes -- the other

18  documents are with the defendant.  Am I misunderstanding?

19         MR. BERNARD:  Mirror image should be.  The documents

20  they submitted through the subpoena should be.  But there

21  again, I can't speak because I don't know exactly what's in

22  that 100,000 files.  There's going to be duplicates and

23  triplicates, I'm sure.

24         THE COURT:  I understand.  But you're going to turn

25  over immediately, as soon as possible, the 100,000 files.

1          MR. BERNARD:  Yes, Your Honor.  And I don't have a

2     problem, obviously --

3          THE COURT:  I don't think the government should

4     review them and decide whether or not they're going to turn

5     them over or not.  They just turn them over.

6          MR. BERNARD:  Exactly.  I think obviously we're going

7     to do the review, but that's what I wanted to make sure.  We

8     can turn those over to the defense and I guess by looking at

9     them, maybe counsel for the defense will have a better idea in

10     discussions with us whether December or January truly is

11     optimistic.  It may be.  Because we all have great plans to get

12     these things done, but problems and motions may occur, so I

13     have no issue discussing that in the next -- as soon as we turn

14     that over and however long the defense needs to take a look at

15     that, we can probably get back to the Court in the relatively

16     near future.

17          THE COURT:  I think -- I'm fine with the idea of

18     counsel meeting and conferring, because I think in fairness to

19     both sides, particularly fairness to the defendant in this kind

20     of situation has got to have -- defendant has an opportunity to

21     see what the effect of these files are.  And without my having

22     a way of knowing, 30 days may not be sufficient.  If I were to

23     continue -- apply the Speedy Trial Act and under the

24     circumstances and this is going -- under the circumstances

25     applying it so that I can continue the trial generally, but

1   what I have in mind is maybe setting this case down for another

2   status and scheduling conference after you've met and conferred

3   as to the trial date.  So my application of the exclusion can

4   apply to a period up to the date that we schedule the new

5   trial.  I think that's a realistic approach.  I hope it is.

6           And then also when you are meeting and conferring,

7   and when you have -- come up with a trial date, also give me

8   some dates that would be representative of realistic deadlines

9   for the filing of Brady motions, Giglio, Roviaro, all of the

10  pretrial motions that have to be.  There were not filings under

11  that before, were there?

12          MR. BERNARD:  No, Your Honor.

13          THE COURT:  I would hope and it would be my feeling

14  that any new motions that were going to be filed could deal

15  specifically with these discovery documents, not some new issue

16  that could have been thought of earlier but wasn't addressed.

17  And then you have to come up with -- I hope you will come up

18  with a realistic time period for the filing of witness lists

19  and exhibit lists.  I think defendant has already filed a list.

20  I would think that would have to be after the review of the

21  documents.  I don't know why -- how it could reasonably come

22  before, unless you want to file a list of what you think is

23  going to be shown and what exhibits you think you're going to

24  have and what exhibits -- and what witnesses you're going to

25  have, with the idea of supplementing them.  We see that all the

1   time.

2           Is there anything else you think we ought to be

3   addressing?

4           MR. CHAPMAN:  Yes, Your Honor.  Thank you.  Just --

5   we understand the Court's ruling.  Just a few questions that I

6   think it raises in our minds.

7           First, our position is that the government has

8   obtained a trial benefit by seeing exactly what we intend to

9   produce as far as witnesses and exhibit lists.  We request that

10  the Court order the government to produce witnesses and exhibit

11  lists as of today, what their case would look like, so that we

12  can evaluate whether or not they have attempted to obtain an

13  advantage based on the delay in this case.

14          THE COURT:  I don't have a problem with that.  We can

15  do that.

16          Mr. Bernard, how much time do you need just based on

17  the present posture of the case?

18          MR. BERNARD:  We could probably do it within the next

19  seven to 14 days, Judge.  I think I'll confer with Sarah

20  Wagner, who is starting on that process, but I don't anticipate

21  a great deal of witnesses or exhibits.  And I would note

22  that -- it's really just not necessarily germane, but I've had

23  discussions briefly with Mr. Chapman in the past and Ms.

24  McArdle and I think I knew before their witness lists what

25  their strategy was, so I do take issue that there's any

1    advantage, but we can get that filed within seven to 14 days.

2         THE COURT:  All right.  Well, if it's not too

3    onerous, let's make it seven days and that would take us to the

4    14th, wouldn't it?  4:00 p.m. on Friday, September 14th.

5         MR. BERNARD:  Yes, Your Honor.

6         MR. CHAPMAN:  Does that include production of

7    exhibits similar to the Court's order, Your Honor?

8         THE COURT:  It would include the witness list and the

9    exhibit list.  And what exhibits -- I think we're talking about

10   the exhibits that have already been provided.  They would be on

11   a list?  I'm sorry.  I'm not following you.

12        MR. BERNARD:  The defense has provided us with

13   witness and exhibit lists, but the United States has not, but

14   we'll prepare both witness and exhibit lists.

15        THE COURT:  Witness list and exhibit list.

16        MR. CHAPMAN:  Okay.

17        THE COURT:  What about this issue of grand jury

18   transcripts?  Have they been turned over?

19        MR. BERNARD:  Your Honor, I thought they had, but

20   we'll do that as well.  There's no reason we can't.

21        THE COURT:  Sure.  Turn them over.

22        MR. BERNARD:  I assume we have them -- I thought they

23   had been turned over.

24        THE COURT:  I don't know the normal procedure with --

25   are those routinely transcribed?

```
 1            MR. BERNARD:  Yes.  I think they're disclosed at the

 2    time of the Jencks Act disclosures, and again, if I'm mistaken,

 3    we'll turn over those immediately as well, the grand jury

 4    transcripts.

 5            THE COURT:  All right.

 6            MR. CHAPMAN:  And then along with that, Your Honor --

 7            THE COURT:  So that by the 14th as well.

 8            MR. BERNARD:  Okay.

 9            THE COURT:  Gives you plenty of time, I think.

10            MR. CHAPMAN:  And then, Your Honor, we also request

11    from the Court a firm production date on the hard drive and

12    then any Brady information that the government believes was

13    contained within -- I say the hard drive.  The additional

14    100,000 documents and then any Brady information the government

15    believes exists in those documents.

16            THE COURT:  Sure.

17            MR. BERNARD:  I think that's what we said with the 60

18    days, Judge.  It's hard to know exactly -- we will produce that

19    hard drive, as the Court has ordered, to the defense.  Within

20    days we can do that.  Our review of -- Brady review and

21    disclosure of anything the government determines is Brady, I

22    think that's why we requested 60 days.  The defense wants to

23    have the records, they can certainly begin their review of the

24    hard drive as well, but the government will do its own

25    independent --
```

1          THE COURT:  So what you'd be disclosing would be

2     Brady material?  As a result of your review.

3          MR. BERNARD:  Yes.  I think under our obligation we

4     have to do that, but what I'm saying is under the Court's order

5     we're already disclosing to the defense the hard drive we'll be

6     looking at the next 60 days.  If they determine there's

7     something in there that is favorable or Brady --

8          THE COURT:  Let's see if this solves it, in whole or

9     in part.  Review all those documents that you've now got,

10    100,000 files, and as there's Brady material appears, turn that

11    over immediately to the defendant.

12         MR. BERNARD:  That's fine.

13         THE COURT:  And any other disclosure materials that

14    would be under the order.  And you're also going to meet and

15    confer as to a realistic deadline for those materials.

16         MR. BERNARD:  I believe so.  Once we turn that hard

17    drive over, I think those discussions can occur and we can come

18    up with these hard and fast dates the Court has requested.

19         MR. CHAPMAN:  Your Honor, the government has said in

20    their motions in court they only need 60 days to seek out Brady

21    information in that 100,000 pages and produce it to us.  I

22    think there should be a no-later-than date for Brady

23    productions, the reason being we've now had the government step

24    on the Court's deadlines multiple times and I'm trying to

25    prevent a situation like this from occurring a third time, Your

1   Honor.

2           MR. BERNARD:  As the Court ordered, as the review

3   occurs, if there's Brady material, we'll turn it over

4   immediately.  I don't want to paint myself into a box and say

5   at this point I think it's 60 days.  That's our plan to have

6   that review done.  But I think the concerns of the defense are

7   somewhat obviated by the fact they've asked for and we're going

8   to provide them with a complete copy of what we're going to be

9   looking at.

10          MR. CHAPMAN:  Your Honor, it's not our duty to seek

11  out Brady information.

12          MR. BERNARD:  Your Honor, I do believe a broad

13  disclosure by the government does obviate that need, but I'm

14  going one step further and saying we're going to review it and

15  meet our obligation, but hard and fast deadline, 60 days is

16  what our plan is, but if the Court wants to set a deadline in

17  60 days, if we think we can't meet it, we might have to come

18  back to the Court.

19          THE COURT:  All right.  I'm assuming that when you

20  meet and confer you're going to come up with a date that is

21  farther out than 60 days, seems to me.

22          MR. CHAPMAN:  For trial, yes, Your Honor.  But for

23  the government's disclosure of Brady information, I think 60

24  days should be fine.

25          THE COURT:  I'll set a 60-day limit there for the

1   disclosure of the -- the completion of the disclosure of

2   100,000 files, keeping in mind that my direction is to turn

3   those files over as soon as the government has reviewed it.  So

4   it's an ongoing disclosure, not here they are at the end of the

5   sixtieth day and we give you these files.

6           MR. CHAPMAN:  Thank you, Your Honor.

7           Just one final issue that I'd like to raise for the

8   Court.  I promise that's it.  The government represented to us

9   in an email -- this was a prior prosecutor that was on the

10  case -- the government is not pursuing mail and wire fraud

11  charges against Dr. Chalifoux.  We have taken the government at

12  their representation that they will not pursue those charges.

13  We don't know if that's still the case, but we're bringing this

14  issue to the Court's attention because as of August 15th the

15  government had indicated dismissal of all of those charges.

16          THE COURT:  Is the government going to move to

17  withdraw those charges?

18          MR. BERNARD:  Your Honor, yes, we will move to

19  dismiss the mail and wire fraud counts and proceed on the 15

20  health care fraud counts.

21          THE COURT:  Will you file a motion to that effect as

22  soon as you can?

23          MR. CHAPMAN:  Yes, Your Honor.

24          THE COURT:  And I'll act upon it.

25          MR. CHAPMAN:  That's all I have, Your Honor.  Thank

1   you.

2            THE COURT:  Nothing else?

3            MR. BERNARD:  No, Your Honor.  Thank you.

4            THE COURT:  Okay.  Did you give me a time that you're

5   going to get back to me on the trial after you meet and confer?

6            MR. BERNARD:  I don't think we gave you a firm date.

7            THE COURT:  Let's try to get a firm date on that and

8   then I'll -- and then I want to give you a date for a status

9   and scheduling conference.  These things might work out.

10  Hopefully when you meet and confer and come up with some of

11  these deadlines, we won't need a status and scheduling

12  conference, but if I have some questions, maybe it would be

13  helpful for me to meet with you.

14           MR. BERNARD:  Your Honor, I think what we can do is

15  once we're adjourned from this hearing, we can meet and provide

16  the Court with a date for that hearing, and if we need to -- I

17  think that gives us something to shoot for, and if something

18  happens where we do not think we're ready for that -- I can't

19  imagine if we put it far enough in the future that we won't be

20  able to meet that.

21           THE COURT:  How about -- one of the things about your

22  meet and confer is to come up with -- hopefully with a

23  realistic trial date.

24           MR. BERNARD:  I guess the question, does the Court

25  want a status conference date before all that is established,

1    or do you want us to establish everything at one time?

2                THE COURT:  No.  Why don't we do this and maybe this

3    is not practical.  But why don't you meet and confer about a

4    trial date, meet and confer about deadlines before trial that

5    are -- that deal solely with these documents and the issues

6    that have arisen out of the late document search.  And then if

7    you're not able to come up with an agreed trial date, give me

8    the dates that you are proposing, keeping in mind I may just

9    set a trial date from the schedule.

10               MR. BERNARD:  I don't want to speak for the defense.

11   They can chime in, obviously.  But I think we can get all those

12   dates to the Court within 30 days.  And as far as a -- and

13   maybe a scheduling conference, we could have a scheduling

14   conference -- I don't know if it's necessary then to have a

15   scheduling conference if the Court -- I'm trying to determine

16   whether the Court still wants a scheduling conference along

17   with those dates in 30 days, for instance, to see where we're

18   at, whether those dates are practical.  I think that's what the

19   Court's suggesting, so -- I don't have any objection,

20   obviously, to getting those dates confirmed with counsel,

21   getting the Court all the deadlines, but as far as the

22   scheduling conference, I would think 30 days out we can

23   determine where we're at and if progress has been made or how

24   far.

25               MR. CHAPMAN:  Thirty days works with the defense,

1    Your Honor.

2              THE COURT:  All right.  Get those to me by October

3    the 15th, that report.  And I'll set this down for a status and

4    scheduling conference shortly after that date.  If we don't

5    find we need it, I'll vacate it.

6              MR. CHAPMAN:  Yes, Your Honor.

7              THE COURT:  How about Friday, October 19th at 2:00

8    p.m.

9              MR. BERNARD:  That's fine for the United States, Your

10   Honor.

11             MR. CHAPMAN:  Your Honor, that works for the defense,

12   Your Honor.  However, right around that same time period I'm

13   due in court as well.  May I appear telephonically?

14             THE COURT:  Yes, sure.

15             MR. CHAPMAN:  Thank you, Your Honor.

16             THE COURT:  Just to go back on the record, just so

17   there's no confusion, I am granting the motion to continue and

18   I'm denying the motion to dismiss.  Thank you.

19             (Proceedings concluded at 2:50 p.m.)

20

21

22

23

24

25

```
 1                           CERTIFICATE

 2

 3           I, Cindy L. Knecht, Registered Professional Reporter

 4    and Official Reporter of the United States District Court for

 5    the Northern District of West Virginia, do hereby certify that

 6    the foregoing is a true and correct transcript to the best of

 7    my ability of the taped proceedings had in the above-styled

 8    action on September 7, 2018, as reported by me in stenotypy.

 9        I certify that the transcript fees and format comply with

10    those prescribed by the Court and Judicial Conference of the

11    United States.

12        Given under my hand this 26th day of September 2018.

13                          /s/Cindy L. Knecht
                            Cindy L. Knecht, RMR/CRR
14                          Official Reporter, United States
                            District Court for the Northern
15                          District of West Virginia
                                    - - -
16

17

18

19

20

21

22

23

24

25
```